Elaine L. Heine
Attorney at Law
SB#151669
3525 Del Mar Heights Road #438
San Diego, CA 92130

Attorney for Plaintiffs

FILED

08 JUL 31 PM 4:22

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ECL   DEPUTY

UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ARLENE SUSAN MEDINA an individual, ) Case No.: '08 CV 1395 W BLM
ROBERT LEO MEDINA an individual, )
                                  ) COMPLAINT FOR:
        Plaintiffs,               )
                                  ) 1. WRONGFUL DEATH
    vs.                           )    42 U.S.C. §§ 1983, 1988
                                  ) 2. EXCESSIVE FORCE 42 U.S.C. §1983
COUNTY OF SAN DIEGO, CITY OF      ) 3. RIGHT OF ASSOCIATION
ENCINITAS, CITY OF SOLANA BEACH,  )    42 U.S.C. §1983
MARK RICHIE individually and in his ) 4. FAILURE TO TRAIN, SUPERVISE
official capacity as deputy for the SAN )    AND DISCIPLINE 42 U.S.C. §1983
DIEGO SHERIFF'S DEPARTMENT,       ) 5. UNLAWFUL POLICIES, CUSTOMS
KARLA TAFT, individually and in her official )    OR HABITS 42 U.S.C. §1983
capacity as deputy for the SAN DIEGO )
SHERIFF'S DEPARTMENT, LEO NAVA,   )
individually and in his official capacity as )
deputy for the CALIFORNIA HIGHWAY ) JURY DEMAND ON ALL COUNTS
PATROL, TIMOTHY FENTON, individually )
and in his official capacity as deputy for the )
CALIFORNIA HIGHWAY PATROL, JULIE )
CAHILL, individually and in her official )
capacity as deputy for the CALIFORNIA )
HIGHWAY PATROL, DOES 1-50, inclusive, )
                                  )
        Defendants.               )
                                  )

Complaint - 1

Attorney at Law
SB#151669
3525 Del Mar Heights Road #438
San Diego, CA 92130

Plaintiffs ARLENE SUSAN MEDINA and ROBERT LEO MEDINA, (hereinafter "PLAINTIFFS") by and through their attorney of record, Elaine L. Heine, do hereby allege upon information and belief as follows:

## I.

## JURY TRIAL DEMANDED

1. PLAINTIFFS hereby invoke their right to trial by jury.

## II

## JURISDICTION AND VENUE

2. Jurisdiction is founded upon the existence of a Federal Question.

3. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to the decedent and plaintiffs by the first, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983) and arising under the laws and statutes of the State of California.

4. Jurisdiction is founded upon 28 U.S.C. §1331 and §1343(3) and (4), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of rights, privileges, and immunities secured to a plaintiff by the First, Fourth, Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper in the Southern District of California because the actions giving rise to Defendants' liability, as alleged in this complaint, occurred in the County of San Diego, State of California.

6. The matter in controversy exceeds, exclusive of interest and costs, the jurisdictional minimum of this court of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS.

//
//
//

## III

## PARTIES

7. ARLENE SUSAN MEDINA is an individual residing in the State of Colorado and is the mother of ROBERT J. MEDINA (hereinafter "Decedent" or "MEDINA").

8. ROBERT LEO MEDINA is an individual residing in the State of Colorado and is the father of ROBERT J. MEDINA.

9. Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is a public entity existing under the laws of the State of California. The COUNTY operates under its authority the SAN DIEGO SHERIFF'S DEPARTMENT (hereinafter referred to as "SDSD") and all Deputies employed by SDSD are employees of Defendant COUNTY.

10. Defendant CITY OF SOLANA BEACH (hereinafter "SOLANA BEACH") is a public entity, duly organized and existing under the laws of the State of California and contracts with the COUNTY for law enforcement services provided by the SAN DIEGO SHERIFF'S DEPARTMENT.

11. Defendant CITY OF ENCINITAS (hereinafter "ENCINITAS") is a public entity, duly organized and existing under the laws of the State of California and contracts with the COUNTY for law enforcement services provided by the SAN DIEGO SHERIFF'S DEPARTMENT.

12. MARK RICHIE is an individual residing in San Diego, California, employed by the SAN DIEGO SHERIFF'S DEPARTMENT and is sued individually and in his official capacity as deputy for the SAN DIEGO SHERIFF'S DEPARTMENT. In committing the acts and omissions alleged in this complaint, MARK RITCHIE was acting under color of law and within the course and scope of his employment as a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT and the COUNTY OF SAN DIEGO.

13. KARLA TAFT is an individual residing in San Diego, California, employed by the SAN DIEGO SHERRIFF'S DEPARTMENT and is sued individually and in her

official capacity as deputy for the SAN DIEGO SHERIFF'S DEPARTMENT. In committing the acts and omissions alleged in this complaint, KARLA TAFT was acting under color of law and within the course and scope of her employment as a deputy sheriff for the SAN DIEGO SHERIFF'S DEPARTMENT and the COUNTY OF SAN DIEGO.

14. JULIE CAHILL is an individual residing in San Diego, California, employed by the CALIFORNIA HIGHWAY PATROL and is sued individually and in her official capacity as deputy for the CALIFORNIA HIGHWAY PATROL. In committing the acts and omissions alleged in this complaint, JULIE CAHILL was acting under color of law and within the course and scope of his employment as an officer for the California Highway Patrol ("CHP").

15. LEO NAVA is an individual residing in San Diego, California, employed by the CALIFORNIA HIGHWAY PATROL and is sued individually and in his official capacity as deputy for the California Highway Patrol. In committing the acts and omissions alleged in this complaint, LEO NAVA was acting under color of law and within the course and scope of his employment as an officer for the CHP.

16. TIMOTHY FENTON is an individual residing in San Diego, California, employed by the CALIFORNIA HIGHWAY PATROL and is sued individually and in his official capacity as deputy for the CALIFORNIA HIGHWAY PATROL. In committing the acts and omissions alleged in this complaint, TIMOTHY FENTON was acting under color of law and within the course and scope of his employment as an officer for the CHP.

17. Each Defendant sued in this complaint was acting within the course and scope of their employment and performed the acts described under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California.

18. At all relevant times: each of the Defendants was the agent, servant, or employee of each of the other Defendants; each Defendant engaged in the conduct described in

this complaint within the course and scope of this agency or employment; and each Defendant did so with the permission, consent and authority of the co-defendants.

19. At this time, Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 50, and therefore sues these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiffs as described in this complaint. Plaintiffs will amend their complaint to state the true names and capacities of Defendants DOES 1 through 50 when they have been ascertained. Any reference in this complaint to "Defendant," "Defendants," or to an individually named Defendant also refers to Defendants DOES 1 through 50.

## IV.

## FACTS

20. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

21. Decedent MEDINA was a 22-year old active duty Marine who had returned from a tour in Iraq not more than three months before Defendants shot and killed him after pursuing him for allegedly driving under the influence.

22. On the evening of November 15, 2006, at approximately 1:00a.m. Decedent told his spouse, Jennifer Medina, he was going out and left their residence.

23. At approximately 1:30 a.m., on November 16, 2006, CHP officers attempted to conduct a traffic stop of the decedent MEDINA, allegedly for violation for driving under the influence. Subsequent tests demonstrated that the decedent had no alcohol and no amount of any other substances in his system sufficient to impair his driving. Once the decedent failed to pull over, CHP officers Gutierrez and JULIE CAHILL notified dispatch that they were pursuing a failure to yield.

24. MEDINA, a marine who had just returned from Iraq, was suffering from post traumatic stress syndrome. In addition to being a Marine, decedent MEDINA was Hispanic and fit the racial profile that the California Highway Patrol has previously

been accused of unlawfully targeting for traffic stops. At the time of MEDINA'S death, the California Highway Patrol was still complying with the terms of a settlement agreement reached in a lawsuit arising from those allegations of racial profiling.

25. The SAN DIEGO SHERIFF'S DEPARTMENT which intervened in the pursuit has likewise been accused of racial profiling of Hispanic males. In the SAN DIEGO SHERIFF'S DEPARTMENT case, the law enforcement activity at issue has been the use of unjustified deadly force in the City of Vista, California.

26. MEDINA was subjected to the SDSD'S racial profiling in Vista, where he lived. A few weeks before he was shot and killed he was arrested outside of his Vista home where he was washing his car after deputies allegedly responded to a call of a suspicious person. Deputies then arrested him for possessing a baton that was issued to him by the Marine Corps.

27. When MEDINA did not yield to the CHP's attempted traffic stop in Oceanside on November 15, 2006, a police pursuit ensued through Oceanside. Exercising unreasonable judgment, the CHP officers, including JULIE CAHILL, elected to continue the pursuit despite the fact that the decedent was not so impaired or reckless in his driving that public safety concerns necessitated his immediate arrest.

28. The decedent returned to the freeway and headed south on I-5 at a normal rate of speed. As they left Oceanside, the CHP officers requested that an Oceanside canine unit remain in the pursuit. MEDINA exited I-5 at Carlsbad and headed toward Highway 101 south. By the time the pursuit entered Leucadia, there were at least five patrol cars pursuing the decedent who's only potential criminal activity up until that point was failure to yield to a traffic stop. There is no indication that decedent or his vehicle were wanted on any other charge or violation.

29. The dynamics of the pursuit changed once defendant MARK RITCHIE recklessly intervened in the pursuit without authorization, at the intersection of Leucadia Blvd. and Highway 101. Defendant RITCHIE took it upon himself to deploy a spike strip

at Leucadia Blvd. and placed himself in a dangerous position in the path of the pursuit.

30. At the same time and location, CHP officers Gutierrez and JULIE CAHILL, who was driving the CHP vehicle, elected to perform a reckless and unreasonable Pursuit Immobilization Technique ("PIT") maneuver which further endangered defendant RITCHIE. The unsafe and reckless acts initiated by RITCHIE and the CHP officers which jeopardized the safety of one of their own was blamed on the decedent. Another CHP officer, TIMOTHY FENTON, radioed in law enforcement's safety mishap as an "assault with a deadly weapon" creating an unreasonable and unjustified heightened threat alert to other law enforcement personnel monitoring, participating and joining in the pursuit.

31. The pursuit continued south on Highway 101 with Defendant RITCHIE continuing to offer his unauthorized assistance. He passed the pursuit without activating lights or sirens and when he reached Cardiff, he deployed another spike strip which was again unsuccessful and again resulted in another officer radioing in an "assault with a deadly weapon" call.

32. Defendant RITCHIE once again entered the pursuit and passed it until he reached Lomas Santa Fe in Solana Beach. At that point, he observed CHP officers TIMOTHY FENTON and Martin attempt another reckless PIT maneuver. Officer TIMOTHY FENTON observed that the decedent's vehicle had spun out. CHP officers FENTON and Martin made a u-turn and were right next to the decedent's vehicle. The decedent proceeded to drive past them and FENTON told Martin, "Let's end this. Let's end this." CHP officers FENTON and Martin executed another PIT maneuver this time temporarily disabling the decedent's truck by forcing it into a dirt easement off the sidewalk. Defendant RITCHIE immediately rushed over to contain the decedent, ramming the front end of decedent's truck with such force that RITCHIE'S airbag deployed. Other officers pinned in decedent's truck from the south.

Attorney at Law
SB#151669
3525 Del Mar Heights Road #438
San Diego, CA 92130

33. CHP officers FENTON and Martin pinned decedent's car in from the north. Officer FENTON observed the decedent's vehicle cornered by law enforcement vehicles. Defendant RITCHIE immediately went to the passenger side of the decedent's truck with his gun drawn. The passenger side window was partially down and RITCHIE was able to make eye contact with the decedent. RITCHIE had no belief that the decedent was armed and he was able to observe his hands on the steering wheel. He ordered the decedent to turn off the vehicle and put his hands up.

34. RITCHIE became angered when MEDINA did not follow his orders. RITCHIE made a conscious decision not to use any other means of apprehension or detention other than his gun. In a show of force, RITCHIE fired his gun at the truck's rear tire which deflated. RITCHIE again aimed his gun at the decedent and gave orders and again the decedent did not comply. Getting angrier, RITCHIE fired another round at the front tire. RITCHIE again aimed his weapon at the decedent and gave commands which were ignored as the decedent tied to extricate his truck from between two patrol cars by putting the car in reverse and drive on multiple occasions. RITCHIE fired again.

35. By this time, several officers, FENTON and NAVA and had taken up positions around the decedent's truck and in close proximity to it. For the last time in the decedent's lifetime, RITCHIE'S reckless provoking actions would create a chain reaction of similar unreasoned hasty and irresponsible actions by three other fellow law enforcement officers culminating in the unjustified use of deadly force.

36. At this point the decedent after moving his vehicle backwards and forwards on multiple occasions was able to maneuver the truck between the police vehicles. At this point decedent's truck had two flat tires. The third warning shot was fired by Defendant RITCHIE as he moved out of the way of the decedent's truck. At approximately the same time, CHP officers FENTON and NAVA and deputy sheriffs TAFT and RITCHIE in an excessive show of deadly force fired over 37 rounds of gunfire at the decedent. These officers and deputies continued to fire even as the

decedent's truck no longer posed an alleged perceived threat to the safety of any officers. There is no conclusive determination as to which of these four officers and deputies fired the fatal round.

37. Decedent MEDINA was alive when he was pulled from his truck and first aid was administered by the officers. He died shortly after the paramedics arrived at the scene.

38. Shortly after the shooting, the SDSD disseminated numerous public reports containing a partial account of events designed to exonerate the officers from any responsibility for the unjustified and reckless killing of MEDINA and to deflect criticism or scrutiny of the professional practices of the law enforcement agencies involved, regardless of the true facts underlying the tragic and unnecessary death of MEDINA.

## V.
## FIRST CAUSE OF ACTION
## WRONGFUL DEATH 42 U.S.C. §§ 1983, 1988

39. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

40. Defendants and DOES 5-50, inclusive, acting under color of state law, committed wrongful acts which proximately caused the death of MEDINA. Specifically, the Defendants and DOES 5-50, inclusive, deprived Decedent MEDINA of his rights under the United States Constitution to be free from the use of excessive force by law enforcement, punishment without due process and unlawful stop, search and seizure without reasonable suspicion, probable cause and due process. These acts resulted in the death of MEDINA. By these acts, the Defendants violated MEDINA's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the Fourth and Fourteenth Amendments. The officers used excessive force as alleged above against MEDINA, with a purpose to cause harm that is unrelated to the legitimate use of

Complaint - 9

force. The force was used to make MEDINA suffer and to punish him. The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of MEDINA. The shooting of a cornered man is objectively unreasonable and the actions of Defendants in that regard were such that no reasonable officer would have considered the use of force to be justified thereby violating MEDINA's Fourth Amendment guarantee to be free from unreasonable seizures.

41. The deprivation of the rights alleged above has destroyed the Constitutional rights of Plaintiffs to the familial love, society and companionship of their son, decedent MEDINA, protected by the substantive due process clause of the Fourteenth Amendment.

42. Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS and CITY OF SOLANA BEACH also maintained customs, policies or practices, within the meaning of Monell, of using excessive force against Latino males in an effort to intimidate Latino males. Defendants also maintained an unconstitutional force policy regarding the use of alternative force. Defendants knew they should arm and train its officers in the use of alternative uses of force such as stun guns and tasers. Defendants knew for over a year that it could save lives by training its deputies in the use of alternative force and changing its policy regarding us of force so that an alternative to deadly force was available to the deputies. This unconstitutional policy and refusal to train and employ tasers was a direct cause of the death of MEDINA in this case. The policy is evidenced by the deaths of other Latino males in such close proximity to the MEDINA shooting.

43. The conduct alleged herein violated decedent MEDINA's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial. Said damages are currently in excess of the jurisdictional minimum of

Complaint - 10

this court.

44. The conduct alleged herein also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294; justifying the award of exemplary damages against these Defendants in an amount according to proof at the time of trial in order to deter the Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

## VI.
## SECOND CAUSE OF ACTION
## EXCESSIVE FORCE 42 U.S.C. § 1983

45. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

46. Defendants and DOES 5-50, inclusive, acting under color of state law, committed wrongful acts which proximately caused the death of MEDINA. Specifically, the Defendants and DOES 5-50, inclusive, deprived MEDINA of his rights under the United States Constitution to be free from the use of excessive force by law enforcement, punishment without due process and unlawful stop, search and seizure without reasonable suspicion, probable cause and due process. These acts resulted in the death of MEDINA. By these acts, the Defendants violated MEDINA's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the Fourth and Fourteenth Amendments. The officers used excessive force as alleged above against MEDINA, with a purpose to cause harm that is unrelated to the legitimate use of force. The force was used to make MEDINA suffer and to punish him. The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of MEDINA. The shooting of a cornered man is objectively unreasonable and the actions Defendants in that regard were such that no reasonable officer would

Complaint - 11

have considered the use of force to be justified thereby violating MEDINA's Fourth Amendment guarantee to be free from unreasonable seizures.

47. Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS and CITY OF SOLANA BEACH also maintained a custom, policy or practice, within the meaning of Monell, of using excessive force against Latino males in an effort to intimidate Latino males. Defendants also maintained an unconstitutional force policy regarding the use of alternative force. Defendants knew they should arm and train their officers in the use of alternative uses of force such as the taser or stun-gun. Defendants knew for over a year that it could save lives by training its deputies in the use of alternative force and changing its policy regarding us of force so that an alternative to deadly force was available to the deputies. This unconstitutional policy and refusal to train and employ tasers was a direct cause of the death of MEDINA in this case. The policy is evidenced by the deaths of other Latino males in such close proximity to the MEDINA shooting.

48. The conduct alleged herein violated MEDINA's rights alleged above thereby resulting in a deprivation of Plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial. Said damages are currently in excess of the jurisdictional minimum of this court.

49. The conduct alleged herein also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294; justifying the award of exemplary damages against these defendants in an amount according to proof at the time of trial in order to deter the Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

//

# VII
## THIRD CAUSE OF ACTION
### RIGHT OF ASSOCIATION 42 U.S.C. §1983

50. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

51. Defendants and DOES 5-50, inclusive, acting under color of state law, deprived MEDINA of his rights under the United States Constitution to be free from the use of excessive force by law enforcement, punishment without due process and unlawful stop, search and seizure without reasonable suspicion and probable cause. By these acts, the defendants violated MEDINA's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the Fourth and Fourteenth Amendments. The improper and unjustified use of deadly force used was unreasonable and excessive and performed with a deliberate indifference to the safety and welfare of MEDINA. The shooting of a cornered man is objectively unreasonable and the actions of defendants in that regard were such that no reasonable officer would have considered the use of force to be justified thereby violating MEDINA's Fourth Amendment guarantee to be free from unreasonable seizures thereby causing the above pled deprivation of substantive due process.

52. The deprivation of the rights alleged above has destroyed the Constitutional rights of his mother ARLENE SUSAN MEDINA and his father ROBERT LEO MEDINA to the familial love, society and companionship of their son, decedent MEDINA, which is protected by the substantive due process clause of the Fourteenth Amendment.

53. The conduct alleged herein, violated MEDINA's rights alleged above, thereby resulting in a deprivation of Plaintiffs' rights alleged above, which has legally, proximately, foreseeably and actually caused Plaintiffs to suffer emotional distress, pain and suffering, and further damages according to proof at the time of trial.

54. Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS and CITY OF

SOLANA BEACH also maintained a custom, policy or practice, within the meaning of <u>Monell</u>, of using excessive force against Latino males in an effort to intimidate Latino males. Defendants also maintained an unconstitutional force policy regarding the use of alternative force. Defendants knew they should arm and train their officers in the use of alternative uses of force such as the taser or stun-gun. Defendants knew for over a year that it could save lives by training its deputies in the use of alternative force and changing its policy regarding us of force so that an alternative to deadly force was available to the deputies. This unconstitutional policy and refusal to train and employ tasers was a direct cause of the death of MEDINA in this case. The policy is evidenced by the deaths of other Latino males in such close proximity to the MEDINA shooting.

55. The conduct alleged herein also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294; justifying the award of exemplary damages against these Defendants in an amount according to proof at the time of trial in order to deter the Defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

## VIII.
## FOURTH CAUSE OF ACTION
## FAILURE TO TRAIN, SUPERVISE AND DISCIPLINE 42 U.S.C. §1983

56. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

57. Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS, CITY OF SOLANA Beaches'' law enforcement departments and each of them, as a matter of custom, practice and policy, failed to maintain adequate and proper training for police officers in the departments necessary to educate the officers as to the constitutional rights of arrestees; to prevent the consistent and systematic use of excessive force by arresting officers; and to prevent the excessive force and extra judicial punishment of

Attorney at Law
SB#151669
3525 Del Mar Heights Road #438
San Diego, CA 92130

potential arrestees by officers.

58. Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS and CITY OF SOLANA Beaches'' law enforcement departments and each of them, failed to provide adequate training and supervision to police officers that hold the power, authority, insignia, equipment and arms entrusted to them. Defendants failed to promulgate and enforce adequate policies and procedures related to alternatives to the use of deadly force, including the taser or stun-gun.

59. Said custom, practice and policy included a failure to adequately investigate, supervise and discipline offending officers which fostered the custom, practice and policy within the Defendant law enforcement departments and each of them, which resulted in the above-pled injuries to Plaintiffs.

60. Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

61. The failure to promulgate or maintain constitutionally adequate policies regarding training, investigation, supervision and discipline was done with deliberate indifference to the rights of Decedent and Plaintiffs and others in their position.

62. The constitutionally infirm lack of adequate training as to the officers in this case caused plaintiffs' damages.

## IX.
### FIFTH CAUSE OF ACTION
### UNLAWFUL POLICIES, CUSTOMS OR HABITS 42 U.S.C. §1983

63. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

64. At the time deadly force was employed against MEDINA, Defendants COUNTY OF SAN DIEGO, CITY OF ENCINITAS, CITY OF SOLANA Beaches'' law enforcement departments and each of them, knowingly and deliberately fostered, maintained and condoned policies, procedures, practices and customs which violate the civil rights of individuals such as the Decedent, which included, but are not

limited to the following: a) inadequate and conflicting policies, procedures, customs and practices on deadly force that permitted and encouraged officers to unreasonably and unjustifiably use deadly force; b) failing to change, correct, revoke or rescind these policies, procedures, customs and practices despite prior knowledge by Defendants and their policy makers of indistinguishably similar incidents involving deadly force; c) failing to provide adequate hiring, training, retention, supervision, discipline and control of deputies and officers with respect to the constitutionally appropriate use of deadly force and with respect to employing safe and constitutionally permissible means of performing necessary police functions short of lethal force; d) failing to adequately identify, closely supervise, retrain or discipline officers who improperly use excessive and/or deadly force to insure the safety of citizens; e) failing to provide adequate training, supervision, discipline and control of officers with respect to employing safe and constitutionally permissible means of performing necessary police functions with mentally ill persons; and, f) issuance of public statements falsely exonerating officers involved in incidents involving deadly force prior to completion of the investigation.

65. As a result of the aforementioned acts, omissions, systematic deficiencies, policies, procedures, customs and practices of Defendants, they caused their officers to believe that the use of deadly or unreasonable force is permissible, and that the use of force is a matter entirely within the discretion of the officers. And, that improper use of deadly force would not be honestly and properly investigated, all with the foreseeable result that Defendant officers would use deadly force in situations where such force is neither necessary, reasonable, nor legally justifiable.

66. By consciously and deliberately overlooking the acts and misconduct and publicly approving the acts of misconduct by subordinate officers, Defendants established a defacto custom and practice of condoning and ratifying such misconduct, thereby establishing a tolerated pattern of constitutional violations.

67. The policies, practices, acts and omissions of Defendants, the deliberate indifference of Defendants, and the adoption and ratification of the misconduct described herein were the moving forces behind the violations of constitutional rights and the resulting damages suffered by Plaintiffs and the Decedent.

68. By reason of the aforementioned acts and omissions of Defendants, Plaintiffs were required to retain counsel to institute and prosecute the within action and Plaintiffs request payment by Defendants of a reasonable sum as and for attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs pray for judgment as follows:

1. General damages, including emotional distress, according to proof at the time of trial;
2. Special damages according to proof at the time of trial;
3. For pecuniary damages according to proof at the time of trial;
4. For funeral and burial expenses according to proof at the time of trial;
5. Any further declaratory relief as this Court deems just;
6. For attorneys' fees pursuant to 42 U.S.C. § 1988;
7. For costs of suit incurred herein;
8. For punitive damages; and
9. For such other and further relief as the court may deem just and proper.

Dated this 25th day of July, 2008

Elaine L. Heine
Attorney at Law
SB#151669
3525 Del Mar Heights Road #438
San Diego, CA 92130

Complaint - 17

```
           UNITED STATES
           DISTRICT COURT
       SOUTHERN DISTRICT OF CALIFORNIA
            SAN DIEGO DIVISION

         # 153528      - TC

           July 31, 2008
             16:32:57


         Civ Fil Non-Pris
   USAO #.: 08CV1395
   Judge..: THOMAS J WHELAN
   Amount.:                  $350.00 CK
   Check#.: PC500/PC502



       Total-> $350.00


   FROM: ARLENE SUSAN MEDINA
         VS
         COUNTY OF SAN DIEGO
```

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Arlene Susan Medina, an individual, Robert Leo Medina, an individual | County of San Diego, city of Encinitas, City of Solana Beach, Mark Richie, Karla Taft, Les Nunes, Timothy Fenton, Julie |
| (b) County of Residence of First Listed Plaintiff   Pueblo, CO
(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number)
Elaine L. Heine, 3525 Del Mar Heights Road #438, San Diego, CA 92130  858-792-2542 | Attorneys (If Known)
08 CV 1395 W BLM |

FILED
08 JUL 31 PM 4:22
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 1983

Brief description of cause:
Wrongful Death, Excessive Force, Right of Association, Failure to Train, Unlawful Policies.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER  CV 1252 JAH RBB

DATE  7/28/08
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

CR  RECEIPT # 153528   AMOUNT $350   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

7/31/08